NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREI AKOPIAN,<br><br>                     Plaintiff,<br><br>   v.<br><br>INSERRA SUPERMARKETS, INC. and UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1262 UNION,<br><br>                     Defendants. | Civil No.: 2:23-cv-00519<br><br>**OPINION &<br>ORDER** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

This matter comes before the Court on defendants United Food and Commercial Workers Local 1262 ("Local 1262" or the "Union") and Inserra Supermarkets, Inc.'s ("Inserra") motions to dismiss (ECF Nos. 51–52) Plaintiff's Second Amended Complaint (ECF No. 35, "SAC" or "Second Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed the motions to dismiss (ECF Nos. 53, 55), and Inserra replied in support of its motion (ECF No. 54).[1] The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motions are **GRANTED**.

**II.    BACKGROUND**

Plaintiff was a clerk in a ShopRite store located in Hackensack, New Jersey. ECF No. 35 at 3.[2] The ShopRite is owned and operated by defendant Inserra. *See id.* at 17–18. Clerks in the

---

[1] Plaintiff's opposition to Inserra's motion to dismiss (ECF No. 55) was untimely and filed after Inserra filed its reply. Nonetheless, given Plaintiff's *pro se* status, the Court considered the opposition. The Court has also considered the additional submissions from the parties. ECF Nos. 60–63.

[2] The Court will reference the PDF page numbers for the SAC and the attached documents.

Hackensack ShopRite are represented by Local 1262 pursuant to the terms of a collective bargaining agreement ("CBA"). *See id.*

This matter arises out of a series of events that began when Plaintiff was written up for poor work performance by an assistant store manager at the Hackensack Shoprite. ECF No. 35-5 at 1. Following this write up, Plaintiff was suspended due to threatening verbal comments made to the assistant store manager. *See id.* This disciplinary action led to a grievance meeting, held on January 21, 2022, where Plaintiff was terminated. ECF Nos. 35 at 17–18, 35-5 at 1, 35-6 at 8. Plaintiff alleges that the individuals present at the meeting were "cognizant of [his] actual and perceived mental impairment" and that he felt "scared, nervous and anxious." ECF No. 35 at 18.[3] He alleges that his rights under the CBA were violated because his employer and Local 1262 "failed to comply with their obligation under the law." *Id.* Further, Plaintiff claims that the Americans with Disabilities Act ("ADA") was "unequivocally violated" at this meeting because of purported "derogatory comments" and "taunting about [his] disability." *Id.* at 18–19. At this meeting, Local 1262 declined to submit the grievance to arbitration. Subsequently, on February 15, 2022, a Grievance Review Committee meeting was convened. *See* ECF Nos. 35-5 at 2, 35-6 at 9. Plaintiff was informed that the Committee voted to deny his appeal and that he could seek further review by the Union's Executive Board. ECF Nos. 35-5 at 2, 36-6 at 10. Plaintiff did not seek such review, and the Executive Board voted to affirm the decision not to proceed to arbitration. ECF Nos. 35-5 at 3, 35-6 at 11.

Plaintiff alleges that Local 1262 engaged in "full-scale fraud" and misrepresented information regarding Plaintiff's health care benefits. ECF No. 35 at 21–22. He claims he was

---

[3] Documents submitted with the SAC indicate Plaintiff has been diagnosed with schizophrenia. *See* ECF No. 35-6 at 3.

not provided with a "COBRA Notice Requirement" or an "Election Notice of a Qualifying event." *Id.* at 19. Although Plaintiff's allegations regarding health insurance are unclear, it appears that following Plaintiff's termination from Inserra, he was still employed part-time at Glass Garden ShopRite and maintained his health insurance benefits through the Local 1262 Fund. *See* ECF No. 35-6 at 17. Plaintiff signed a waiver of health coverage and terminated his benefits on June 22, 2022. *Id.* at 39–40.

On April 21, 2022, Plaintiff filed a Charge of Discrimination against Inserra with the Equal Opportunity Employment Commission ("EEOC") alleging that his termination violated the ADA. ECF Nos. 35-5 at 3, 35-6 at 1 (EEOC charge). On January 6, 2023, Plaintiff alleges that he received a right to sue letter from the EEOC. ECF No. 35-5 at 5. Plaintiff thereafter initiated this lawsuit.

### III. **LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must "draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of 'further factual enhancement,'" will not withstand dismissal. *Iqbal*, 556 U.S. at 678 (citations and brackets omitted).

IV.    **DISCUSSION**

    A.    **ADA Claims Against Local 1262**

Plaintiff's ADA claims (counts 1–27) against Local 1262 must be dismissed because Plaintiff failed to exhaust his administrative remedies. After filing a charge with the EEOC, the plaintiff must receive a "right-to-sue" letter before filing with the district court. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) ("A complainant may not bring a Title VII suit without having first received a right-to-sue letter.").[4] "If a plaintiff brings suit under Title VII or the ADA before receiving a 'right to sue letter,' the matter may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies." *Small v. Rahway Bd. of Educ.*, No. CV 17-1963, 2017 WL 1351400, at *2 (D.N.J. Apr. 6, 2017). Administrative exhaustion is required even when discrimination claims are brought against unions. *Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 412 (E.D. Pa. 2014) ("[A]s with all such claims, a plaintiff must first file a charge with the EEOC . . . before bringing a Title VII . . . claim against his union in federal court."), *aff'd*, 587 F. App'x 731 (3d Cir. 2014).

Here, Plaintiff filed a charge of discrimination with the EEOC against Inserra on April 21, 2022. ECF No. 35-6 at 1.[5] The charge lists "Inserra Supermarkets" as the entity which he believed discriminated against him. *Id.* Although Plaintiff states in his opposition to the Motion to Dismiss that Local 1262 was "addressed in the EEOC Charge of Complaint in addition to countless emails between the Plaintiff and U.S. EEOC" (ECF No. 53 at 3), the charge does not

---

[4] A plaintiff must comply with the procedural requirements of Title VII before bringing employment discrimination charges under the ADA or Title VII. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (applying Title VII procedural requirements to ADA discrimination claim).

[5] Indeed, Plaintiff admits that the "Charge of Discrimination is against Inserra Supermarkets." ECF No. 35-7 at 1.

indicate that Local 1262 should be considered a party. ECF No. 35-6 at 1. Moreover, the emails Plaintiff purportedly sent regarding the EEOC charge are insufficient to provide notice to Local 1262. *See, e.g.*, *Deans*, 998 F. Supp. 2d at 413–14 (holding that the union did not receive notice of an EEOC charge where the plaintiff "failed to file a charge against them").[6] Therefore, Plaintiff did not properly exhaust his administrative remedies as to Local 1262, and the ADA claims against it are dismissed.

     **B.**    **ADA Claims Against Inserra**

Plaintiff's ADA claims against Inserra (counts 1–27) are also dismissed because Plaintiff failed to exhaust administrative remedies or did not properly state a claim for relief.

     **1.**    **Disability Discrimination**

"In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). Under the ADA, a "disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself,

---

[6] Generally, the charge "must actually name the party against whom the Title VII . . . action is later brought." *Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 413 (E.D. Pa. 2014), *aff'd*, 587 F. App'x 731 (3d Cir. 2014). "Although there is an exception to that rule when the unnamed party received notice and when there is a shared commonality of interest with the named party, courts have routinely held that a union and an employer do not share such an interest." *Id.* (internal quotation marks and citations omitted); *see also Walker v. USW 13*, No. CV 23-473, 2024 WL 1984768, at *4 (W.D. Pa. Apr. 19, 2024), *report and recommendation adopted*, No. CV 23-473, 2024 WL 2229990 (W.D. Pa. May 16, 2024).

5

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Here, as to the first two prongs under the ADA, although Plaintiff may have been diagnosed with a mental health disorder (*see* ECF No. 35-6 at 3), he does not sufficiently allege that this illness "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *see also Vandervoort v. N. Allegheny Sch. Dist.*, No. 2:23-CV-433, 2024 WL 4436858, at *11 (W.D. Pa. Oct. 7, 2024) (explaining that "a person needs more than a diagnosed impairment in order to be considered 'disabled' under the ADA"). The SAC merely alleges that Plaintiff's employer was aware of his mental disability. *See* ECF No. 35 at 18. However, even under the third prong of the ADA which requires an individual to be "regarded" as having a disability, Plaintiff's allegations are insufficient to pass muster. *Amoroso v. Bucks Cnty. Court of Common Pleas*, No. 13-0689, 2014 WL 1284791, at *8 (E.D. Pa. Mar. 28, 2014) ("Simply alleging that an employer knew about a disability is not sufficient to demonstrate that the employer regarded the employee as disabled."). Moreover, and importantly, the SAC does not contain sufficient factual allegations to establish that Plaintiff was terminated *because* of his disability. This flaw is also fatal to Plaintiff's discrimination claims. *See Hromek v. Borough of Exeter*, No. 3:23CV549, 2024 WL 4217031, at *9 (M.D. Pa. Sept. 17, 2024) (granting motion to dismiss because the complaint did not sufficiently allege that the discrimination was *because* of the plaintiff's disability).

      **2.    Failure to Accommodate, Retaliation, Failure to Promote, Associational Discrimination**

          **a.    Exhaustion**

Turning to Plaintiff's remaining claims under the ADA, Plaintiff failed to exhaust administrative remedies as to the following claims: failure to accommodate (counts 3, 7, 10, 14–

6

16, 18, and 26), unlawful retaliation (counts 5–6 and 15), failure to promote (counts 2 and 15), and associational discrimination (count 17).  As discussed above, a plaintiff must receive a right to sue letter from the EEOC before bringing a lawsuit in court.  *Burgh*, 251 F.3d at 470 ("A complainant may not bring a Title VII suit without having first received a right-to-sue letter.").  The scope of the lawsuit is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)).

Here, Plaintiff's EEOC charge only alleges a claim for wrongful termination.  ECF No. 35-6 at 1.  Specifically, the charge states that Plaintiff was "terminated because of verbal comments made to the assistant store manager who says that she felt threatened and scared of [him] after issuing [him] a write-up for poor work performance."  *Id.*  The charge is limited to the events leading up to his termination, beginning with his poor work performance write up on December 30, 2021, and concluding when he was terminated on January 21, 2022. *Id.*  Plaintiff's claims for failure to accommodate, unlawful retaliation, failure to promote, and associational discrimination are seemingly distinct from the wrongful termination claim alleged in the charge.  *See, e.g.*, *Tummala v. Wormuth*, No. CV 22-7619, 2024 WL 4449477, at *4 (D.N.J. Oct. 9, 2024) (dismissing retaliation claim because the plaintiff's EEOC complaint was limited to discrimination); *Hamilton v. Albert Einstein Healthcare Network*, No. 2:21-CV-03655, 2022 WL 407638, at *3 (E.D. Pa. Feb. 10, 2022) (dismissing failure to promote claim because it was not within the scope of the EEOC complaint or investigation).  Therefore, Plaintiff's claims for failure to accommodate, unlawful retaliation, failure to promote, and associational discrimination are dismissed for failure to exhaust.

### b. Failure to State a Claim

Although failure to exhaust independently warrants dismissal, Plaintiff's SAC also fails to state a claim for the above-listed claims. The Court will analyze each claim in turn.

First, Plaintiff makes vague allegations regarding a failure to accommodate under the ADA. A *prima facie* case of a failure to accommodate ADA claim is similar to a discrimination claim, except the adverse employment action is an employer's "refusal to make reasonable accommodations for an employee's disabilities." *Kosmac v. Nat'l R.R. Passenger Corp.*, No. CV 22-1480, 2024 WL 4252055, at *5 (W.D. Pa. Sept. 20, 2024) (quoting *Voigt v. Fluor Marine Propulsion, LLC*, No. CV 21-378, 2024 WL 555088, at *7 (W.D. Pa. Feb. 12, 2024)); *see also Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017). However, as discussed above, Plaintiff has not sufficiently alleged that he is "disabled" under the ADA. Further, the SAC lacks factual support for instances of Inserra denying Plaintiff reasonable accommodations. Thus, this claim fails.

Second, to establish a *prima facie* claim of unlawful retaliation under the ADA, a plaintiff must allege "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F. 3d 494, 500 (3d Cir. 1997); *see also Wolf v. Progressive Pain Mgmt., LLC*, No. CV 23-1866, 2024 WL 4319204, at *3 (D.N.J. Sept. 27, 2024). An "adverse employment" action is "an action by an employer that is serious and tangible enough to alter the employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Servs.*, 390 F. 3d 760, 764 (3d Cir. 2004) (internal citations omitted). Plaintiff alleges retaliation for "filing charges with the U.S. EEOC." ECF No. 35 at 8 (count six). But the EEOC charge was filed months after Plaintiff's

8

termination. ECF No. 35-6 at 1 (EEOC charge filed on April 21, 2022, alleging wrongful termination that took place on January 21, 2022). Therefore, Plaintiff appears to be alleging that Inserra subjected a former employee, who had been terminated months before the filing of the EEOC charge, to an adverse employment action. However, even if an adverse employment action could occur post-termination, Plaintiff fails to provide sufficient factual allegations to establish an adverse employment action, and in turn, a claim for retaliation. *See Beard v. Phila. Corp. for Aging*, No. CV 22-3331, 2023 WL 4685976, at *5 (E.D. Pa. July 21, 2023) (dismissing retaliation claim because the plaintiff did "not plausibly allege[] an adverse employment action").

Third, in order to state a claim for failure to promote, a Plaintiff must allege:

(i) that he belongs to a [protected category]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Fuentes v. Perskie*, 32 F. 3d 759, 763 (3d Cir. 1994) (alteration in original, citation omitted); *see also Carter v. N.J. Dep't of Hum. Servs.*, No. CV1812469, 2020 WL 3427986, at *5 (D.N.J. June 23, 2020). The SAC is devoid of facts sufficient to support such a claim. Plaintiff merely alleges that he "filled out countless Bid-Sheets over the years and . . . never had the opportunity to be promoted." ECF No. 35 at 19. Such a conclusory allegation is insufficient to survive a motion to dismiss. *See Giovanni v. Bayer Props., LLC*, No. CV 20-2215, 2021 WL 4078055, at *4 (E.D. Pa. Sept. 8, 2021) (dismissing failure to promote claim where the amended complaint did not "identify what promotions [plaintiff] was eligible for but was denied, who received the promotions instead, or what those individuals' credentials were").

Lastly, an employer is prohibited from discriminating against an employee due to "the known disability of an individual with whom [the employee] is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). The SAC does not identify any individual with a known

9

disability with whom Plaintiff had a relationship or association. Without any factual allegations to support such a claim, it is also dismissed. *See Tyson v. Access Servs.*, 158 F. Supp. 3d 309, 315 (E.D. Pa. 2016) (dismissing associational discrimination claim because the plaintiff "failed to plausibly allege a specific association with a disabled individual"). In sum, Plaintiff's claims for failure to accommodate, unlawful retaliation, failure to promote, and associational discrimination are dismissed for both failure to exhaust administrative remedies and failure to state a claim.

### 3. Public Accommodation Discrimination

Plaintiff also alleges that Inserra engaged in public accommodation discrimination (count 27), but this claim too shall be dismissed. Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Specifically, Plaintiff alleges that he was "[t]hrown out of the store by the Store Mgr for coming to see [his] schedule." ECF No. 35 at 10 (count 27). According to Plaintiff's allegations, when he was "thrown out" of the store, he was there as an employee, not as a customer seeking goods or services. "Terms and conditions of employment are covered under Title I, not Title III." *Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 234–35 (E.D. Pa. 2014) (citation omitted) ("The key to determining whether a claim falls under Title I or under Title III is whether the benefits received have a 'nexus' to the place of public accommodation or whether they are related to the person's employment."); *see also Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113 (3d Cir. 1998). Given that Plaintiff's allegations regarding his public accommodation discrimination claim relate to his employment, and do not have a "nexus" to the place of public accommodation, this claim is also dismissed.

C.     **ERISA Claims**[7]

Plaintiff's SAC contains a list of various provisions of the Employee Retirement Income Security Act ("ERISA"), without providing factual support for such claims. *See* ECF No. 35 at 11–17. Initially, the Court notes that Plaintiff's statements are mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," which are insufficient to survive the motion to dismiss phase. *See, e.g.*, *Smith v. W. Manheim Twp.*, No. 1:11-CV-778, 2011 WL 5117618, at *3 (M.D. Pa. Oct. 25, 2011) (quoting *Iqbal*, 556 U.S. at 678).

Although Plaintiff's complaint is difficult to interpret, Plaintiff appears to be asserting a claim pursuant to Section 502 of ERISA, *see* 29 U.S.C. § 1132(a)(1)(B); ECF No. 35 at 24, and a breach of fiduciary duty under ERISA, *see* 29 U.S.C. § 1104; ECF No. 35 at 11, 20. ERISA provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). Generally, "[e]xercising control over the administration of benefits is the defining feature of the proper defendant." *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558–59 (3d Cir. 2009). "ERISA only authorizes causes of action against the plan and 'fiduciaries,' of the plan." *Hocheiser v. Liberty Mut. Ins. Co.*, No. CV176096, 2018 WL 1446409, at *6 (D.N.J. Mar. 23, 2018); *see also Silver v. Glaziers Loc. Union No. 252 Health & Welfare Fund*, No. CIV. A. 90-2734, 1991 WL 209776, at *3 (E.D. Pa. Oct. 9, 1991) (holding that the union "is not an employee welfare benefit plan within the meaning of ERISA"), *aff'd sub nom. Silver v. Glaziers Loc. Union No. 252*, 968 F.2d 14 (3d Cir. 1992). Moreover, "the

---

[7] Plaintiff's SAC also contains claims referencing COBRA, labeled "Counts 59-64 Omnibus Budget Reconciliation Act (ERISA/COBRA)." ECF No. 35 at 17. These claims, however, are brought under provisions of ERISA, and thus are deficient for the same reasons discussed in this section.

linchpin of fiduciary status under ERISA is discretion." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233–34 (3d Cir. 1994).

Here, the exhibits submitted with the SAC demonstrate that Plaintiff received health and welfare benefits from the UFCW Local 1262 and ShopRite Welfare Fund, not either Defendant. *See, e.g.*, ECF Nos. 35-6 at 16 (plan information, listing the Fund as "Plan Sponsor"), 89, 94 (letters to Plaintiff regarding his insurance from the Fund), 35-3 at 2 (notice to Plaintiff noting his health care coverage "in the UFCW Local 1262 and Employers Benefit Funds"). These exhibits are distinct from correspondence regarding his grievance and termination, in which the letterhead is from the Union. ECF No. 35-6 at 8. Plaintiff's sparse factual allegations are insufficient to establish that either Defendant is a proper defendant under ERISA because it is not plausibly alleged that either entity had control over his insurance benefits. *Evans*, 311 F. App'x at 558–59 ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988))). Therefore, Plaintiff's ERISA claims are dismissed.

### D. NLRA Claims

Within the ADA section of the SAC, there are various references to the National Labor Relations Act ("NLRA"). ECF No. 35 at 8–9 (counts 8–9 and 23). To begin, these again are conclusory assertions that lack plausibility. *See Iqbal*, 556 U.S. at 678.

Further, these claims are time-barred. Where an employee alleges a violation of the collective bargaining agreement and that the union violated its duty of fair representation, courts have concluded that "§ 10b should be the applicable statute of limitations governing the suit, both against the employer and against the union." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154–55 (1983); *see also* 29 U.S.C. § 160(b). Under § 10(b), the statute of limitations

12

is six months from the time when "the futility of further union appeals becomes apparent or should have become apparent." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 305 (3d Cir. 2004) (citation omitted).

Here, Plaintiff was informed on April 1, 2022 that Local 1262's executive board upheld the determination not to advance his grievance to arbitration. ECF No. 35-6 at 11. Upon receipt of this letter, Plaintiff was or should have been aware that the Union did not intend to pursue arbitration. *See Mitchell v. Bristol-Myers Squibb Co.*, No. CIV.A. 95-1794, 1996 WL 466535, at *8 (D.N.J. May 6, 1996) (holding NLRA claims were time-barred when more than six months elapsed after the plaintiff received a letter informing him that "the Union did not intend to press his case further"). Therefore, the six-month period concluded in October 2022. However, Plaintiff did not file the initial complaint in this matter until January 27, 2023. ECF No. 1. Therefore, Plaintiff's NLRA claims are dismissed as untimely. *Peele v. United Parcel Serv., Inc.*, No. CV 22-1835, 2023 WL 2539012, at *3 (E.D. Pa. Mar. 16, 2023) (dismissing NLRA claims against employer and union as untimely because the plaintiff filed complaint beyond the six-month statute of limitations).

**E.     LMRDA Claims**

The ERISA section of Plaintiff's SAC also references various sections of the Labor-Management Reporting and Disclosure Act ("LMRDA"). ECF No. 35 at 11, 13. However, as with the SAC's other allegations, these are just mere recitations of legal provisions, and are insufficient to establish plausibility to survive a motion to dismiss. Thus, these counts are also dismissed.

13

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Second Amended Complaint is dismissed without prejudice.

**Accordingly, IT IS**, on this 26th day of November, 2024,

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 51–52) are granted, and Plaintiff's Second Amended Complaint (ECF No. 35) is dismissed without prejudice; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Order to submit an amended complaint that **addresses the deficiencies identified in this Order**. Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

                                               */s/ Claire C. Cecchi*
                                               **CLAIRE C. CECCHI, U.S.D.J.**