NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREI AKOPIAN,<br><br>                             Plaintiff,<br><br>    v.<br><br>INSERRA SUPERMARKETS, INC., et al.<br>                             Defendants. | Civil No.: 23-519<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court on the motions to dismiss pro se Plaintiff's Third Amended Complaint ("TAC") filed by defendants Inserra Supermarkets, Inc. ("Inserra"), United Food and Commercial Workers Local 1262 ("Local 1262" or "Union"), the Trustees and Joint Board of Trustees of Local 1262 ("Trustees"), Elizabeth Laughery ("Laughery"), United Food and Commercial Workers Local 1262 and Employers Health and Welfare Fund ("H&W Fund"), Local 1262 and Shoprite Welfare Fund ("Shoprite Fund"), Local 1262 and Employers Pension Fund ("Pension Fund"), Ann Marie Schoenig ("Schoenig"), Sonya Rodriguez ("Rodriguez"), and Frank M. Vaccaro & Associates, Inc. ("FMVA") pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 77, 102, 109, 115, 123, 125). Plaintiff opposed the motions to dismiss (ECF Nos. 81, 107, 121, 128, 129), and Defendants replied in support of their motions (ECF Nos. 126, 130, 132).[1]

---

[1] Plaintiff's TAC consists of two documents, one 200-page document alleging claims under ERISA, ECF No. 68, and one 67-page document alleging claims under the Americans with Disabilities Act, ECF No. 68-1. Plaintiff's TAC was not timely filed, and does not contain a comparison to the dismissed Second Amended Complaint, as required by the Court's Order. *See* ECF No. 65 at 15; ECF No. 67. Nonetheless, given Plaintiff's pro se status, the Court will accept Plaintiff's submission. However, Plaintiff is advised that insofar as he files an amended complaint, he shall submit one document not exceeding 30 pages in length, it shall be timely filed, and it shall contain a comparison to the dismissed TAC.

The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motions are **GRANTED**.

I. **BACKGROUND**[2]

Plaintiff was a full-time clerk at a ShopRite store located in Hackensack, New Jersey ("Hackensack ShopRite"). ECF No. 35 at 3.[3] The ShopRite is owned and operated by defendant Inserra. *See id.* at 17–18. Clerks in the Hackensack ShopRite are represented by Local 1262 pursuant to the terms of a collective bargaining agreement ("CBA"). *See id.* It appears from documents attached to the TAC that Plaintiff received his health benefits through the ShopRite Fund, an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* ECF No. 68 at 11, 172–75.

This matter arises from the January 21, 2022 termination of Plaintiff's employment at the Hackensack ShopRite. ECF No 68-1 ¶¶ 32, 54. At the time of his termination, Plaintiff was also employed part-time at a ShopRite in Rochelle Park, New Jersey ("Rochelle Park ShopRite").[4] ECF No. 35-6 at 17. Plaintiff was terminated from the Hackensack ShopRite purportedly because of threatening verbal comments he made to the assistant store manager, but Plaintiff asserts that he was terminated due to his disability. ECF No. 68-1 at 65. Plaintiff alleges that he has a chronic mental illness and was diagnosed with "Panic Disorder" in 2018, and that he has "difficulty in

---

[2] The Court incorporates the facts recited in its prior decision, ECF No. 65, and provides only a brief overview relevant to Plaintiff's TAC here.

[3] Plaintiff did not recite all background facts in his TAC. Plaintiff cites to his Second Amended Complaint within his TAC. In the interests of completeness and clarity, the Court will reference the facts in Plaintiff's Second Amended Complaint where appropriate.

[4] It is unclear from the TAC whether Inserra operated the Rochelle Park ShopRite. In a form attached to Plaintiff's TAC, he listed "Glass Gardens, Inc." as the name of his employer—not Inserra—while employed in Rochelle Park, and he sometimes refers to the Rochelle Park ShopRite as the "Glass Garden ShopRite." *See* ECF No. 68 at 30, 181. Given that Plaintiff's TAC is dismissed on other grounds, the Court will not resolve this discrepancy here.

interacting and coping skills with peers and management." *Id.* ¶¶ 64, 67. He asserts that he notified Inserra of his medical condition in 2018. *Id.* ¶ 64.

Plaintiff then alleges several instances that he contends constitute disability discrimination. Plaintiff asserts that he was written up for "failure to rotate yogurt," but that none of the other employees in the dairy department were similarly reprimanded. ECF No. 68-1 ¶¶ 19–20, 24–25. Plaintiff alleges that he was later terminated from Inserra "because Inserra [was] worried that a pallet might get dropped on [his] head or that [he] might get their ass kicked or that 'people talk.'" *Id.* ¶¶ 33, 36. Plaintiff also asserts that on April 26, 2022, "Inserra visited the plaintiff at [Rochelle Park ShopRite]," where Plaintiff allegedly "told Inserra that 'I have mental illness' and that 'your actions are illegal under ADA'" to which Inserra responded "I am not a lawyer, I can't comment on that." *Id.* ¶ 41. Lastly, Plaintiff alleges that Inserra "illegally deprived the plaintiff of benefit due to the unlawful termination on 1/21/2022." *Id.* ¶ 45. Based on these allegations, Plaintiff asserts claims for discrimination, retaliation, and failure to provide reasonable accommodations under the Americans with Disabilities Act ("ADA"). ECF No. 68-1 at 50.

After his termination, Plaintiff alleges that a number of issues occurred regarding his health benefits. First, Plaintiff alleges that he was not notified of his eligibility for continuation coverage under COBRA within the required period, and was not afforded COBRA coverage as a result. ECF No. 68 ¶¶ 491–500. He also alleges that he was eligible for the Bronze Plan—the plan afforded to part-time ShopRite employees—through his employment at the Rochelle Park ShopRite, but that he waived this plan, and was denied benefits under the Bronze Plan prior to the waiver. *Id.* ¶¶ 46, 50, 150, 175, 191, 344–45, 347–49. Plaintiff asserts that he received benefits through the ShopRite Fund (Plan 503), the H&W Fund (Plan 501), and the Pension Fund (Plan 001), and contends that each plan is relevant to his claims. ECF No. 68 ¶ 17.

3

## II. PROCEDURAL HISTORY

In May 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Inserra, alleging that his termination violated the ADA. ECF No. 68-1 at 54. On January 6, 2023, the EEOC issued a Determination and Notice of Rights letter informing the parties that the EEOC had not made a determination as to the Charge and advising Plaintiff of his right to sue. *Id.* at 60–63. Plaintiff then initiated this action on January 27, 2023, and filed an amended complaint on March 9, 2023. ECF Nos. 1, 6. Plaintiff subsequently filed a second amended complaint ("SAC") without leave of the Court, which the Court accepted given Plaintiff's pro se status. ECF No. 36.

In October 2023, Defendants Local 1262 and Inserra filed motions to dismiss Plaintiff's SAC, which the Court granted on November 26, 2024. ECF Nos. 51, 52, 65. The Court granted Plaintiff leave to file a third amended complaint, which he filed on January 10, 2025, adding several defendants. ECF No. 68. Plaintiff submitted two versions of his TAC: one alleging six counts under ERISA against all Defendants, and one alleging ten counts under the ADA against Inserra. Given that Plaintiff is proceeding pro se, the Court will consider both complaints together.

## III. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must "draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked

4

assertions' devoid of 'further factual enhancement,'" will not withstand dismissal. *Iqbal*, 556 U.S. at 678 (citations and brackets omitted).

## IV.   DISCUSSION

Plaintiff brings claims under the ADA and under ERISA. Plaintiff's ADA claims are against Inserra only, and his ERISA claims are against all Defendants. For the reasons discussed below, Plaintiff's claims are dismissed without prejudice.

### A.   ADA Claims against Inserra

Plaintiff's ADA claims against Inserra are dismissed because, as in his SAC, Plaintiff did not properly state a claim for relief for any of his claims, and failed to exhaust administrative remedies for his retaliation and failure to accommodate claims.

#### 1.   Disability Discrimination

Plaintiff first alleges discrimination based on disability under the ADA. "In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). In its prior motion to dismiss decision, this Court held that Plaintiff's SAC "does not contain sufficient factual allegations to establish that Plaintiff was terminated *because* of his disability. This flaw is . . . fatal to Plaintiff's discrimination claims." ECF No. 65 at 6. The TAC does not cure this deficiency, and thus fails for the same reason.

Plaintiff appears to make four allegations of discrimination. First, he alleges that his employer was aware of his disability, and that Plaintiff was the only employee out of six working in the dairy department who was written up for failure to rotate yogurt "simply because of his

5

protected characteristic." ECF No. 68-1 ¶¶ 19–20, 24–25. This is a conclusory allegation that provides no detail as to why Plaintiff believes the write-up was issued for a discriminatory reason. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [overcome] a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997) (citation omitted).

Second, Plaintiff alleges that he was later terminated "because Inserra [was] worried that a pallet might get dropped on [his] head or that [he] might get their ass kicked or that 'people talk.'" ECF No. 68 ¶¶ 33, 36. Plaintiff contends these comments were made to him "due to disability," but he does not specify who made these comments or how they have anything to do with his disability. Nor does Plaintiff assert that Inserra told him these were the reasons he was terminated, and in any event, the Court cannot discern the meaning of these allegations. Therefore, these allegations do not "plausibly infer that [Plaintiff] was actually terminated because of his purported disability." *Ceus v. New Jersey Laws. Serv., LLC*, No. 19-17073, 2021 WL 4173839, at *3 (D.N.J. Sept. 14, 2021).

Plaintiff's third and fourth allegations do not appear to allege discriminatory conduct. Plaintiff alleges that on April 26, 2022, "Inserra visited the plaintiff at Shoprite of Rochelle Park," where Plaintiff allegedly "told Inserra that 'I have mental illness' and that 'your actions are illegal under ADA'" to which Inserra responded "I am not a lawyer, I can't comment on that." *Id.* ¶ 41. This alleged conversation occurred *after* Plaintiff's termination, and in any event, does not appear to allege discriminatory conduct. Lastly, Plaintiff asserts that Inserra "illegally deprived the plaintiff of benefit due to the unlawful termination on 1/21/2022" from the ShopRite located in Hackensack. *Id.* ¶ 45. This allegation appears to restate Plaintiff's retaliation claim and ERISA

claims, discussed below. Again, Plaintiff does not explain how this is discrimination based on disability.

As discussed, these allegations are either conclusory assertions of discrimination, or do not allege that the adverse action was because of his disability. *See Robles v. New Jersey*, No. 22-05371, 2024 WL 4345154, at *5 (D.N.J. Sept. 28, 2024) (dismissing disability discrimination claims where "Plaintiff does not state any factual allegations to show that [defendant] discriminated against him or retaliated against him in any capacity by reason of his alleged disabilities."); *Baig v. Nuclear Regul. Comm'n*, No. 10-0842, 2011 WL 2214660, at *4 (D.N.J. June 6, 2011) ("Plaintiff's allegations of discrimination consist solely of conclusory assertions that these adverse employment actions were the result of discrimination based on [his disability]."). Given that Plaintiff has not sufficiently pled discrimination under the ADA, his disability discrimination claims are dismissed.

### 2. Retaliation

Plaintiff also asserts that he suffered retaliation under the ADA. To state a claim for retaliation, a "plaintiff must allege that (1) he engaged in protected conduct (i.e. made a complaint against an employer for a perceived violation of the ADA); (2) he suffered an adverse employment action by the defendant; and (3) there is a causal relationship between them." *Griffith v. Ciox Health*, No. 23-20513, 2025 WL 1080733, at *6 (D.N.J. Apr. 10, 2025) (quoting 42 U.S.C. § 12203(a)).

Plaintiff asserts two theories of retaliation. The first theory arises from a write-up he received from Inserra's assistant manager for "failing to rotate a cart full of items, primarily yogurt." ECF No. 68-1 ¶ 50. He claims that the write-up was unfair, because "[o]ut of six people working in the dairy department, the plaintiff was the only person who was issued a disciplinary write-up." *Id.* In response, Plaintiff complained to Inserra "that this is not fair and that it will be

7

reported" "to company people and the Union." *Id.* ¶¶ 50, 52. Plaintiff was then "immediately suspended." *Id.* ¶ 52. Plaintiff claims that he "engaged in a protected activity when telling Inserra that this will be reported." *Id.*

It appears that Plaintiff argues that he was suspended because he complained to Inserra about being the only dairy employee who was issued a write-up, which he believes is a protected activity. As an initial matter, Plaintiff elsewhere states that he was suspended "because of verbal comments [he] made to the assistant store manager who says that she felt threatened and scared of [him] after issuing [him] a write-up for poor work performance." ECF No. 68-1 at 54. But putting that aside, Plaintiff's argument still fails because he does not explain how his complaint to Inserra was a protected activity under the ADA. Nothing in the TAC indicates that Plaintiff's "complaint" to Inserra about his write-up had anything to do with his disability, other than the conclusory statement that "the [write-up] was issued based on discriminatory reason." *Id.* ¶ 50. The Court cannot accept such a conclusory allegation, and so Plaintiff's first theory must fail.

Plaintiff's second theory is also unavailing. Plaintiff asserts that he engaged in a protected activity by filing an EEOC charge against Inserra on April 21, 2022, and that Plaintiff suffered two materially adverse actions in response—his termination on January 21, 2022, and a deprivation of certain healthcare benefits after his termination. *Id.* ¶ 57. As an initial matter, the Court previously rejected a similar theory in its initial decision. *See* ECF No. 65 at 8–9. But in any event, "[o]nce employment is terminated, an employee cannot suffer an adverse employment action." *Campbell v. Abercrombie & Fitch, Co.*, No. 03-3159, 2005 WL 1387645, at *1 (D.N.J. June 9, 2005); *see also Glanzman v. Metro. Mgmt. Co.*, 391 F.3d 506, 516 (3d Cir.2004) ("Once [an individual's] employment [is] terminated, it [is] not possible for [the individual] to suffer adverse employment action."). Both adverse employment actions alleged here occurred after Plaintiff was terminated

8

on January 21, 2022. Therefore, Plaintiff's theories for retaliation do not state a claim under the ADA, and must be dismissed.

### 3. Failure to Accommodate

Lastly, Plaintiff alleges that Inserra failed to accommodate his disability. To state an ADA claim for a failure to accommodate, a plaintiff must show: "(1) [he] is disabled, (2) [he] is qualified, and (3) [his] employer (i) refused to provide [him] with a proposed reasonable accommodation, or (ii) failed to engage in an interactive process after [he] requested an accommodation, though a reasonable accommodation was possible." *Williams*, 2023 WL 7151222, at *13. The employee, "either by direct communication or other appropriate means, . . . must make clear that [he] wants assistance for his . . . disability." *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)). The employer must have enough information to know of "both the disability and desire for an accommodation," *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999), "or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation," *Conneen*, 334 F.3d at 332.

Plaintiff appears to assert (1) that "Inserra knew enough about the plaintiff's condition to formulate an opinion that a reasonable accommodation is required under the ADA," ECF No. 68-1 ¶ 33, and (2) that his requests to Inserra *after* his suspension were requests for accommodation, that were ultimately denied, *id.* ¶¶ 69–93. Both theories are unavailing.

Plaintiff's first argument fails because he does not allege any proposed accommodation, denial of accommodation, or failure to engage in an interactive process with respect to an accommodation proposal. Nor does he plead any details related to the accommodations he required while employed, why he required them, or how the employer would have known he desired accommodations. Additionally, Plaintiff appears to assert that he *did not need*

9

accommodations, by stating that he "can perform essential functions of his job with *or without* accommodation" and that he worked for Inserra "for well over twenty years" prior to his termination. *Id.* ¶ 66 (emphasis added). Given this, and without other key details, the Court cannot accept Plaintiff's conclusory statement that Inserra should have known "that a reasonable accommodation is required under the ADA." ECF No. 68-1 ¶ 33.

Plaintiff's second argument is likewise misguided. After Plaintiff was suspended for making threatening comments to a colleague, he alleges that he reached out to Inserra, requesting an opportunity to explain himself, an answer as to whether he was terminated, and authorization to work temporarily at a different location. *See id.* ¶¶ 69–75. Even if these requests are considered requests for an accommodation, it does not appear to be a request for a *disability* accommodation. Plaintiff is not entitled to privileges unrelated to his disability just because he is disabled. *Baratta v. New Hampshire Ave. Invs., L.L.C.*, No. 09-5195, 2010 WL 11695152, at *4 (D.N.J. May 27, 2010) (quoting *Lapid-Laurel L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002)) ("[T]he requested accommodation [must] provide[] a 'direct amelioration of a disability's effect' [on the job]."); *Jones v. Pa. Minority Bus. Dev. Auth.*, No. 97-4486, 1999 WL 487025, at *7 (E.D. Pa. July 12, 1999), *aff'd*, 229 F.3d 1138 (3d Cir. 2000) ("[The ADA] does not require that an individual must be accommodated because he happens to have a disability."). Accordingly, Plaintiff has failed to state a claim for failure to accommodate under the ADA.

### 4. Failure to Exhaust Administrative Remedies

Although Plaintiff's failure to state claims for retaliation and failure to accommodate independently warrants dismissal of those claims, Plaintiff also failed to exhaust administrative remedies with respect to these claims. Plaintiff's SAC suffered from the same deficiency, but the TAC does not correct it. "If a plaintiff brings suit under Title VII or the ADA before receiving a 'right to sue letter,' the matter may be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to exhaust administrative remedies." *Small v. Rahway Bd. of Educ.*, No. 17-1963, 2017 WL 1351400, at *2 (D.N.J. Apr. 6, 2017). Although Plaintiff did file a charge with the EEOC, and received a right to sue letter, the charge related only to disability discrimination, not retaliation or failure to accommodate. *See* ECF No. 68-1 at 54. In his EEOC charge, Plaintiff alleged the following:

> I was terminated because of verbal comments made to the assistant store manager who says that she felt threatened and scared of me after issuing me a write-up for poor work performance. This happened at 11 PM on Dec 30. On Dec 31, 2021 at about 5:45 AM I told the general store manager that I am going to report this and notify company people and the union. He had me suspended right there. Three weeks later on Jan 21, 2022 the President of the Inserra Supermarkets had me terminated. President Ron Onorato and the union were aware I had mental illness, coping with depression anxiety, mood swings, motor behavior and disorganized pattern of thoughts and speech and personality disorder. I believe I have been discriminated against based on a disability in violation of the Americans with Disabilities Act (ADA).

*Id.*

This Court's prior decision explained that the scope of the lawsuit is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010). Plaintiff's EEOC charge appears to allege wrongful termination—i.e., that he was terminated because of his disability, which is a type of disability discrimination. *See* ECF No. 68-1 at 54. The requirements for retaliation and failure to accommodate claims are different. Retaliation involves engaging in a protected activity under the ADA and then suffering an adverse employment action in response. *See Cuevas v. Camden Iron & Metal, Inc.*, No. 23-20830, 2025 WL 2490544, at *12 (D.N.J. Aug. 29, 2025); *Socoloski v. Sears Holding Corp.*, No. 11-3508, 2012 WL 3155523, at *5 (E.D. Pa. Aug. 3, 2012) ("Protected activities against which discrimination is prohibited include requesting

11

an accommodation or complaining of disparate treatment."). Plaintiff does not allege in his EEOC charge that he engaged in any protected activity. Failure to accommodate claims, on the other hand, involve a denial of reasonable disability accommodations, or an employer's failure to engage in an interactive process after receiving an accommodation request. *Williams v. Inspira Health Network*, No. 22-7, 2023 WL 7151222, at *13 (D.N.J. Oct. 31, 2023). Plaintiff's EEOC charge does not include facts amounting to either situation. For these reasons, Plaintiff failed to exhaust administrative remedies, which serves as an alternative basis for dismissing his retaliation and failure to accommodate claims. Therefore, Plaintiff's ADA claims are dismissed.

### B. ERISA Claims

Plaintiff alleges violations of ERISA against all Defendants. Plaintiff's TAC, although difficult to discern, appears to allege four categories of misconduct: first, that he should have received certain benefits under the Bronze Plan—a healthcare plan offered to part-time ShopRite employees—but did not; second, that Defendants mismanaged the plan; third, that he was not notified of his eligibility for COBRA benefits within the required period, and thus never received them; and fourth, that he suffered some unknown retaliation for asserting his rights under ERISA.

#### 1. Bronze Plan Allegations

Plaintiff's allegations regarding the Bronze Plan do not appear to describe any wrongdoing. At the time Plaintiff was terminated from Inserra, he remained employed by the Rochelle Park ShopRite on a part-time basis, through which he was eligible for the Bronze Plan. ECF No 68 ¶ 352. Plaintiff signed up for the Bronze Plan on May 23, 2022, which applied retroactively to January 1, 2022. *Id.* ¶¶ 50, 346, 351. But Plaintiff then alleges that he "never requested to be enrolled in the Bronze Plan" and on June 22, 2022, he executed the Waiver Form, which terminated his Bronze Plan benefits. *Id.* ¶¶ 46, 50, 150, 191, 344–45, 347–49. Plaintiff points to two insurance claims with Dr. Illan Levinson (the "Levinson Claims")—one incurred on February 25, 2022, and

12

the other on February 10 and March 25, 2022—that were "not paid by the Bronze Plan," but purportedly should have been. *Id.* ¶ 175. Plaintiff then admits that the Levinson Claims were later reprocessed, but does not allege the result of the reprocessing, and whether the Levinson Claims were ultimately approved or denied. *Id.* ¶¶ 277, 357, 360. Lastly, Plaintiff alleges that he "never requested to be enrolled in the Bronze plan" and that he was coerced into enrolling, but does not provide details of any coercion. *Id.* ¶¶ 150, 185.

Plaintiff does not indicate whether the Levinson Claims were ultimately approved or denied, and so it is unclear whether he was actually denied benefits he was owed. And although Plaintiff alleges that his enrollment in the Bronze Plan was fraudulent, these allegations are insufficient. First, Plaintiff's allegations regarding the Bronze Plan are contradictory: he complains that he was denied benefits owed to him under the Bronze Plan for the Levinson Claims, while also alleging that he never enrolled in the Bronze Plan, and also asserting that he was forced to enroll in the Bronze Plan. And second, even if these allegations squared with each other, he does not allege any facts to support his claim that he was forced to enter into the Bronze Plan. For these reasons, Plaintiff's claims related to the Bronze Plan must fail.

### 2. Plan Mismanagement

Plaintiff packages conclusory allegations regarding Defendants' alleged mismanagement of his plan into claims for breach of fiduciary duties under 29 U.S.C. § 1104(a)(1)(A)–(B), (D) (Counts I, II, and III) and engaging in a prohibited transaction under 29 U.S.C. § 1106 (Count V). Neither of these theories pass muster, however, because Plaintiff alleges no facts amounting to a "loss to the plan," as described below.

The elements of an ERISA breach of fiduciary duty claim are: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 184 (3d Cir. 2024). A "loss to the plan" "must inure to the plan as a whole,

13

rather than to individual beneficiaries or a subclass of beneficiaries." *Fox v. Herzog, Heine, Geduld, Inc.*, No. 01-1827, 2005 WL 3542464, at *3 (D.N.J. Dec. 27, 2005), *aff'd*, 232 F. App'x 104 (3d Cir. 2007). For example, ERISA breach of fiduciary duty claims often arise in the context of a pension plan or retirement plan, in which employees and/or employers contribute to an investment account that is managed, to some extent, by the employer or fiduciaries appointed by the employer, for the benefit of the participants during their retirement. *See, e.g.*, *Fumich v. Novo Nordisk Inc.*, No. 24-9158, 2025 WL 2399134, at *1 (D.N.J. Aug. 19, 2025) (bringing breach of fiduciary duty claim where defendants allegedly offered imprudent investment options to plan participants); *Cain v. Siemens Corp.*, No. 24-8730, 2025 WL 2172684, at *2 (D.N.J. July 31, 2025) (alleging misallocation of administrative expenses of a retirement plan that harmed all plan participants). The TAC, to the contrary, contains allegations related to health benefits. Plaintiff does not allege any loss to any plan as a result of a breach of fiduciary duty. Plaintiff instead asserts individual loss by either being denied a plan or denied benefits under a plan—not a loss to the plan itself. Therefore, Plaintiff has not stated a claim for breach of fiduciary duty.

Similarly, Count V alleges a violation of 29 U.S.C. § 1106(a)(1), which prohibits fiduciaries from "caus[ing] the plan to engage in a transaction [that] he knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange, or leasing, of any property between the plan and a party in interest." ECF No. 68 ¶ 502. But Plaintiff does not allege any transaction between the plan itself and a party in interest. Instead, Plaintiff rehashes the same allegations throughout the TAC, and strains to connect them to an unlawful transaction. Plaintiff asserts that "[o]n 05/18/2022 and 05/23/2022 defendants engaged in self-dealing, preferring the interest of third parties and misleading the plan participant by failing to provide the essential information necessary for the plaintiff to make an informed decision regarding Bronze coverage."

14

*Id.* ¶ 504. Plaintiff then makes the following conclusory assertion: "Defendants dealt with the plan assets for their own interests and for their account in the Bronze transaction on 05/18/2022 whose interest [Local 1262 Union/Inserra] were adverse to the plan participant in violation of ERISA." *Id.* ¶ 505 (alterations in original). Nowhere else in the 200-page TAC does Plaintiff mention a transaction of plan assets, and the Court "will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 263 (3d Cir. 2008). Therefore, Count V must also be dismissed.

### 3. COBRA Allegations

Plaintiff's third set of ERISA claims allege violations of the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA") amendments to ERISA. *See* 29 U.S.C. § 1161-1168. COBRA provides employees with the option of continuing the insurance coverage they had under their employer's policy in circumstances where they would lose coverage as a result of a "qualifying event." 29 U.S.C. § 1161. One such "qualifying event" is "[t]he termination (other than by reason of such employee's gross misconduct)." 29 U.S.C. § 1163. The period during which the employee is eligible to choose to continue his or her coverage—the "election period"—begins no later than the date when the coverage terminates as a result of a qualifying event, and lasts for at least sixty days. 29 U.S.C. § 1165(a)(1). The continuing coverage must be "identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred." 29 U.S.C. § 1162(1). "Under COBRA, an employer must provide the plan administrator with notice of any qualifying event concerning a covered employee within thirty days of that qualifying event, and the plan administrator then must notify the qualified individual of his rights under COBRA within fourteen days of receiving that notice." *Fama v. Design Assistance Corp.*, 520 F. App'x 119, 121 (3d Cir. 2013).

Plaintiff's allegations regarding COBRA are as follows. Plaintiff alleges that "Defendants and Inserra failed to provide COBRA continuation coverage and notify the plan administrator of the plaintiff's qualifying event," and that the plan administrator failed to notify Plaintiff of his COBRA eligibility. ECF No. 68 ¶¶ 169, 248. Plaintiff then asserts that he received a letter dated May 19, 2023—nearly sixteen months after his termination—offering him COBRA continuation coverage under the full-time plan retroactive to January 1, 2022. *Id.* ¶ 207. He alleges he received a second letter dated August 24, 2023, again offering him COBRA continuation coverage under the full-time plan on a prospective basis effective as of August 1, 2023, but does not indicate whether he accepted either offer. *Id.* ¶ 210.

Plaintiff alleges a failure to provide continuation coverage, a failure of the employer to provide notice to the administrator of the qualifying event, and a failure of the administrator to provide notice to Plaintiff of his COBRA eligibility, in violation of 29 U.S.C. §§ 1161–68. *See id.* ¶¶ 491–500. As an initial matter, Plaintiff's claim of failure to provide continuation coverage necessarily fails because he does not allege that he elected continuation coverage, a prerequisite for coverage. *See* 29 U.S.C. § 1161. ("[A] qualified beneficiary . . . is entitled . . . to elect . . . continuation coverage under the plan."). While it may be true that he did not elect coverage because he was not provided notice of his eligibility, that grievance is addressed under a separate cause of action for failure to provide notice.

Accordingly, Plaintiff also claims that his employer failed to provide notice to the plan administrator of his qualifying event, as required under 29 U.S.C. § 1166(a)(2), and that the plan administrator failed to notify him of his COBRA eligibility, as required under 29 U.S.C. § 1166(a)(4), (c). Plaintiff's claim against his employer is precluded by 29 U.S.C. § 1132. 29 U.S.C. § 1132 creates the cause of action for individuals seeking relief under ERISA, and § 1132 permits

16

actions alleging COBRA notification violations only against the *plan administrator*, not the employer. *See Myrick v. Discover Bank*, 662 F. App'x 179, 182 (3d Cir. 2016) ("Pursuant to ERISA's enforcement scheme, only the plan administrator is liable for statutory penalties based on a COBRA notification violation."); 29 U.S.C. § 1132(c)(1) ("Any [COBRA plan] administrator . . . who fails to meet the [COBRA notice] requirements . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal."). Therefore, Plaintiff can bring his COBRA notification violation claim against the plan administrator only, not his employer.

Plaintiff's claim against the "plan administrator" also fails because the TAC does not identify the relevant plan administrator. Under ERISA, a "plan administrator is (1) the person specifically designated by the terms of the plan; (2) if the plan does not designate an administrator, the plan sponsor; or (3) if a plan sponsor or administrator cannot be determined, 'such other person as the Secretary [of Labor] may by regulation prescribe.'" *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-9056, 2022 WL 3500416, at *7 (D.N.J. Aug. 18, 2022) (quoting 29 U.S.C. § 1002(16)(A)). Given that Plaintiff alleges he was entitled to notification that he was eligible for COBRA continuation coverage, the appropriate plan administrator is the person or entity who administered his health plan while he was employed full-time at Hackensack ShopRite. As discussed below, Plaintiff fails to identify this health plan or its plan administrator.

Throughout the TAC, Plaintiff alleges several "plan administrators" of three different plans: Plan 001, Plan 501, and Plan 503. Plaintiff identifies Plan 001 as the Pension Fund, Plan 501 as the H&W Fund, and Plan 503 as the "UFCW Local 1262 Employers Welfare Fund," which appears to be the former name of the ShopRite Fund.[5]  ECF No. 68 ¶ 17. None of these plans

---

[5] Defendant ShopRite Fund notes that "Plaintiff has incorrectly named two entities as defendants: 'UFCW Local 1262 & Employers Welfare Fund' and 'Plan 503.' These are not separate legal entities. The UFCW

17

appear to be relevant to Plaintiff's COBRA claims. Plan 503 is the "Bronze Plan"—the plan afforded to part-time employees discussed above—not the full-time plan at issue for purposes of COBRA. Plan 001 and Plan 501 do not appear to be related to Plaintiff's ERISA claims. Plaintiff never received—and indeed was never eligible for—benefits from the H&W Fund. By the plain terms of Plan 501, attached to Plaintiff's TAC, eligibility to participate in the H&W Fund requires employment with Stop & Shop, Morton Williams, the Pension Fund, or Local 1262. ECF No. 68 at Page ID 1409. Plaintiff does not allege that he was an employee of any of those entities; he states that he was an employee of Inserra Supermarkets from 2001 to January 2022, and Rochelle Park ShopRite from December 2020 to November 2022. *Id.* at Page ID 1415. Neither of these employers are covered under Plan 501, and so the H&W Fund does not appear to be relevant to Plaintiff's claims. Similarly, the Pension Fund's Plan 001 "provides pension benefits," not the health benefits in dispute in this case. ECF No. 68 ¶ 70. Based on these allegations, Plaintiff has not established that either the H&W Fund or the Pension Fund was the plan administrator responsible for notifying him of his COBRA eligibility.

Beyond the H&W Fund and the Pension Fund, Plaintiff does not sufficiently allege which Defendant was the plan administrator. The plan relevant here is the plan in which Plaintiff was enrolled at the time of his termination, which he claims he was eligible to extend beyond his termination through COBRA. But it is not clear from the TAC what that plan was, or who administered that plan. At different points throughout the TAC, Plaintiff alleged that the ShopRite Fund, FMVA, Local 1262, the Pension Fund, the Trustees, Laughery, Schoenig, and "Defendants" generally were plan administrators. *Id.* ¶¶ 19, 21, 26, 32, 34, 52, 54, 68, 83, 306, 367. But when

---

Local 1262 & Employers Welfare Fund is simply the former name of the ShopRite Fund, and Plan 503 is the plan number assigned to it." ECF No. 115-2 at 1 n.1.

18

Plaintiff makes these allegations, he never alleges that these entities were the administrator of the plan to which he had a right to continuation coverage under COBRA. Plaintiff also identifies multiple defendants as the plan administrator for the Bronze Plan, but the Bronze Plan is not the Plan at issue here. And when Plaintiff details his COBRA allegations, he merely refers to a "plan administrator," but does not specify the identity of the plan administrator. *See id.* ¶ 169 ("Defendants and Inserra failed to provide COBRA continuation coverage and notify the plan administrator of the plaintiff's 'qualifying event.'"); *id.* ¶ 170 ("Plan Administrator terminates plaintiff's Express Script Coverage."); *id.* ¶ 239 ("The Plan administrator was not notified within thirty days."); *id.* ¶ 248 ("Inserra . . . was obligated to inform the plan administrator . . . .").

These allegations are insufficient at the pleading stage. A complaint must "specify which defendants performed which acts." *D'Urso v. BAMCO, Inc.*, No. 22-3723, 2023 WL 5623945, at *3 (D.N.J. Aug. 31, 2023); *see also United States ex rel. Bennett v. Bayer Corp.*, No. 17-4188, 2022 WL 970219, at *7 (D.N.J. Mar. 31, 2022). But the Court cannot discern from the TAC (1) which plan Plaintiff sought to extend through COBRA; or (2) the identity of the plan administrator for that plan that allegedly failed to inform him of those benefits. For these reasons, Plaintiff does not state a COBRA notification requirement claim, and Count V is dismissed.

### 4. 29 U.S.C. § 1140

Lastly, Count VI alleges a violation of 29 U.S.C. § 1140, which makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Plaintiff does not allege any facts beyond conclusory assertions that support a claim under 29 U.S.C. § 1140. He never asserts that he sought to attain a right under any plan to which he was entitled, but was discharged, fined,

19

suspended, expelled, disciplined, or discriminated against in retaliation. Therefore, Count VI is dismissed.

## V.   CONCLUSION

**Accordingly,** for the reasons set forth above, **IT IS**, on this 12th day of September, 2025,

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 77, 102, 109, 115, 123, 125) are granted; and it is further

**ORDERED** that Plaintiff's TAC is dismissed without prejudice (ECF Nos. 68, 68-1); and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Order to submit an amended complaint that **addresses the deficiencies identified in this Order**. Insofar as Plaintiff submits a further amended complaint, **it shall be one document** and **it shall not exceed thirty (30) pages**, and Plaintiff shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**SO ORDERED.**

*/s/ Claire C. Cecchi*  
**CLAIRE C. CECCHI, U.S.D.J.**