**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ANDREI AKOPIAN

Plaintiff,

v.

INSERRA SUPERMARKETS, INC., et al.

Defendants.

Civil Action No.: 23-519

**OPINION & ORDER**

**CECCHI, District Judge.**

Before the Court are nine motions to dismiss pro se plaintiff Andrei Akopian's ("Plaintiff") Fourth Amended Complaint (ECF No. 150, "FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motions were filed by Frank M. Vaccaro and Associates (ECF No. 181); United Food and Commercial Workers ("UFCW") Local 1262 and ShopRite Welfare Fund ("the ShopRite Fund") and its Board of Trustees, and Harvey Whille, Alexander Voitovich, Patrick Durning, and Rachel Caruso ("ShopRite Fund Defendants") (ECF No. 187); Inserra Supermarkets, Inc., Lawrence Inserra, Jr., Marie Larsen Inserra, Ron Onorato,[1] Richard Chamberlain, Lawrence Inserra III, Trustees of Inserra Supermarkets Pension Plan, and Trustees of Inserra Supermarkets Health & Welfare Plan (ECF No. 188); UFCW Local 1262 and Employers Health and Welfare Fund (ECF No. 190); Wakefern Food Corp., Kenneth Grogan, Steve Savas, Alexander Voitovich, Patrick Durning, and Rachel Caruso (ECF No. 191); Express Scripts, Inc. (ECF No. 193); Board of Trustees of UFCW Local 1262 and Employers Pension Fund, Ann Marie Schoenig, and Sonya

[1] Plaintiff previously dismissed Ron Onorato from this action. *See* ECF Nos. 47–48.

Rodriguez (ECF No. 197); James Feimster, Harvey Whille, Executive Board of UFCW Local 1262 Union, Shelby Scott, Donald Merritt, Ron Whille, John Colella, Mike Piccicacco, and Elizabeth Laughery (ECF No. 198); and Board of Trustees of the UFCW and Employers' Retirement and Savings Fund (ECF No. 200). Plaintiff opposed the motions (ECF Nos. 185, 189, 196, 202–03, 206, 209–11) and defendants replied (ECF Nos. 208, 212, 214–220). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the motions to dismiss are granted in part and denied in part.[2]

## I. <u>BACKGROUND</u>[3]

The Court assumes the Parties' familiarity with the factual allegations in this matter as Plaintiff has filed five complaints. *See* ECF Nos. 1, 6, 35, 68, 150. Accordingly, the Court recites only a brief background and notes that, as in his prior complaints, Plaintiff's allegations are difficult to discern.[4] Plaintiff was a full-time employee at the ShopRite supermarket in Hackensack, New Jersey which is owned by defendant Inserra Supermarkets ("Inserra"). FAC ¶ 13. While employed at the Hackensack ShopRite he was represented by the UFCW Local 1262 union. *Id.* ¶ 8; ECF No. 141 at 2. He was suspended on December 31, 2021, and ultimately terminated on January 21, 2022 "purportedly because of threatening verbal comments he made to the assistant store manager." FAC ¶ 13; ECF No. 141 at 2 (citing Plaintiff's Third Amended Complaint). Plaintiff, however, contends he was fired due to his disability of "chronic mental illness" and his "personal and interpersonal coping difficulties interacting with peers and

---

[2] Plaintiff also filed a motion for leave to file a sur-reply and attached the proposed sur-reply brief. ECF No. 213; ECF No. 213-1. Plaintiff's motion is granted, and the Court has considered the submission in issuing this Opinion and Order.

[3] The following facts are accepted as true for the purposes of the motion to dismiss.

[4] Plaintiff does not provide a full factual background in his FAC. The Court will therefore cite to its prior opinions, ECF Nos. 65, 141, to provide further context for this Opinion and Order.

management" which Inserra has a record of from his twenty-one years employed there. FAC ¶¶ 208–73. Plaintiff was fired after a January 21, 2022, meeting attended by Ron Onorato ("Onorato"), Inserra's President and Chief Operating Officer ("COO"), and Local UFCW 1262 officials. *Id.* ¶¶ 215–16. After the meeting, attendees allegedly made remarks to Plaintiff that he contends are evidence of a discriminatory firing due to his disability. *Id.* As such, Plaintiff alleges that Inserra violated the Americans with Disabilities Act ("ADA"). FAC ¶¶ 208–73.

After he was terminated from the Hackensack ShopRite, Plaintiff continued working part-time at Glass Gardens ShopRite ("Glass Gardens"), though when he began working at Glass Gardens is unclear. ECF No. 65 at 3. While employed at Glass Gardens, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") and alleges he was unlawfully terminated because of this request. FAC ¶¶ 39, 52. He was fired on August 17, 2022, and Plaintiff claims Inserra was responsible. *Id.* ¶ 42.

Plaintiff further alleges that there were various issues with his health and pension benefits after he was fired from both ShopRite locations. He appears to contend that he received benefits through three funds, all of which are named defendants along with their boards of trustees: ShopRite Welfare Fund (Plan 503); Employers Pension Fund (Plan 001); and Employers Health & Welfare Fund (Plan 501). *Id.* ¶¶ 11–12, 41. Plaintiff specifically alleges that these funds, their boards of trustees, and other individuals violated Plaintiff's rights under the Employee Retirement Income Security Act ("ERISA") and the Family and Medical Leave Act.

Plaintiff first brought this action in January 2023 after he received a "Notice of Your Right to Sue Letter" from the Equal Employment Opportunity Commission ("EEOC") on January 6, 2023. *See* ECF No. 150-2, Ex. 11. He then filed his Amended Complaint in March 2023 and the Second Amended Complaint without leave in August 2023. ECF Nos. 6, 35–36. Thereafter, the

Court granted motions to dismiss with leave to file an amended complaint. ECF No. 65. Plaintiff filed a Third Amended Complaint which the Court also dismissed and again permitted Plaintiff to file an amended complaint. ECF Nos. 68, 141. The instant Fourth Amended Complaint followed.

## II. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted). If a case is dismissed under Rule 12(b)(6), Courts should permit plaintiffs leave to amend their complaint unless such amendment is inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

Plaintiff alleges twenty-six counts in his FAC. He alleges twenty ERISA and FMLA violations and six ADA violations. As discussed below, one of Plaintiff's ADA claims may proceed and the remaining twenty-five claims are dismissed with prejudice.[5]

---

[5] The ShopRite Fund Defendants and the Board of Trustees of the UFCW and Employers' Retirement and Savings Fund also move to dismiss for lack of Article III standing for Plaintiff's ERISA and FMLA claims. ECF Nos. 187, 200. "A plaintiff's Article III standing is a threshold jurisdictional issue that this Court must decide before considering other issues in the case." *Goodwin v. Miller*, No. 17-01537, 2019 WL 1416885, at *4 (W.D. Pa. Mar. 29, 2019). The moving defendants argue that Plaintiff has failed to allege an injury-in-fact and, even if he had, he has not alleged a causal link between their conduct and Plaintiff's injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants, however, conflate issues of whether Plaintiff has adequately alleged a claim, with issues of Article III standing. Plaintiff alleges he was denied benefits to which he claims he was entitled because of Defendants' alleged actions. This is certainly sufficient to confer standing.

### A. ERISA and FMLA Claims Against All Defendants

Plaintiff asserts twenty counts under ERISA and FMLA. It appears the claims fall into six buckets: Counts I to III pertain to withdrawal liability, Count IV involves ERISA anti-cutback provisions, Count V (which is divided into three "subcounts") alleges interference with Plaintiff's rights under ERISA through retaliation, Count VI claims FMLA violations, Count VII alleges that Defendants violated certain of the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA") amendments to ERISA, Counts VIII through XVII allege various breaches of fiduciary duties and unlawful transactions under ERISA, and Counts XVIII to XX contend that certain defendants failed to provide plan documents. The court addresses each set of claims in turn.

#### 1. Withdrawal Liability (Counts I to III)

Plaintiff's first set of claims allege that Inserra engaged in "illegal actions" to avoid withdrawal liability under ERISA. FAC ¶ 75. Withdrawal liability "is designed 'to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits'" if an employer ceases contributing to a multiemployer plan, like the pension fund to which Plaintiff alleges he is a member. *New Jersey Bldg. Laborers' Statewide Benefit Funds & Trs. Thereof v. Demza Masonry LLC*, No. 18-9607, 2019 WL 6493944, at *4 (D.N.J. Dec. 3, 2019) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984)). It is triggered when an employer who was part of the multiemployer pension plan "terminate[s] their participation or withdraw[s]." *Bd. of Trs. of CWA/ITU Negotiated Pension Plan v. Am. Plus Printers, Inc.*, No. 19-12794, 2020 WL 2794342, at *5 (D.N.J. May 29, 2020) (quoting *SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pa. & W. Md. Area Teamsters & Emp'rs. Pension Fund*, 500 F.3d 334, 336 (3d Cir. 2007)). The employer's withdrawal can be complete or partial. *Id.* (citing 29 U.S.C. § 1381(a)).

Here, Plaintiff appears to assert that Inserra is subject to withdrawal liability for ceasing contributions and that Inserra somehow engaged in transactions to evade their pension obligations. He states that Inserra was a "contributing employer under a multiemployer plan," and that it "circumvented its . . . obligations by fractionalizing its operations through separate entities, thereby incurring withdrawal liability." SAC ¶ 11. Plaintiff also alleges that he was transferred "to a non-union plan and non-union facility." *Id.* ¶ 84. He contends that Inserra "unilaterally transferred assets and liabilities to its own single-employer non-union plan, which was in violation of the multiemployer plan's structure and was intended to evade and avoid liability." *Id.* ¶ 77. And, among other allegations, he asserts that "Inserra ceased contributions under one agreement while continuing to perform the same type of work within the union's jurisdiction, with the principal purpose of evading liability." *Id.* ¶ 81. Plaintiff seems to suggest that Inserra partially withdrew from a multiemployer pension fund by moving assets into some other fund and/or by transferring Plaintiff into a non-union position and therefore no longer contributing on his behalf.

The problem for Plaintiff, however, is that he fails to provide any factual context for these allegations. That is, the FAC does not allege how Inserra supposedly fractionalized its operations to avoid liability, what assets were supposedly transferred out of the fund to avoid liability, and any factual support for the allegation that Inserra made any of these decisions to avoid withdrawal liability. *See, e.g.*, *SUPERVALU, Inc.*, 500 F.3d at 342 (Concluding that a defendant's transactions must be with the "principal purpose of escaping withdrawal liability"). Accordingly, Plaintiff's claims for withdrawal liability are dismissed.

**2. Anti-Cutback provisions (Count IV)**

Plaintiff next claims that "Inserra Supermarkets (contributing employer), with the complicity of the board of trustees" violated ERISA's Anti-Cutback provisions. FAC ¶¶ 91–94.

"The Anti–Cutback rule states: 'The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan" other than by certain permissible amendments described in ERISA. *Battoni v. IBEW Loc. Union No. 102 Emp. Pension Plan*, 594 F.3d 230, 233 (3d Cir. 2010) (quoting 29 U.S.C. § 1054(g)(1)). "To state a claim for violation of ERISA's Anti–Cutback rule one must show (1) that a plan was amended and (2) that the amendment decreased an accrued benefit." *Id.*

Plaintiff alleges in one place that Inserra "terminated the plaintiff's participation in the multiemployer plan" and, in another, that his benefits were transferred to a non-union plan. FAC ¶¶ 92–93. He further states that the "transfer of the accrued benefits to a new plan constitutes a plan amendment that impermissibly eliminates the plaintiff's existing benefits." *Id.* ¶ 92. And he alleges the "transfer and subsequent loss of coverage eliminated the plaintiff's welfare benefits and access to the multiemployer plan's pension structure." *Id.* ¶ 94.

Assuming this constituted an impermissible plan amendment, Plaintiff has not alleged what benefits he accrued and for that matter, what specific benefits were lost or reduced. Such conclusory allegations, without more, are insufficient to state a claim for Anti-Cutback violations. *See, e.g.*, *Frizziola v. U.S. Foods, Inc.*, No. 17-6864, 2018 WL 3656181, at *5 (D.N.J. Aug. 2, 2018) (claim that change in employment status violated Anti-Cutback rule was dismissed when complaint "fail[ed] to allege, in any concrete way, which benefits were reduced, whether such benefits had actually accrued prior to filing suit, and in what manner any such benefits were reduced.").

**3. Interference with Rights Under ERISA (Count V)**

The next set of claims pertains to alleged interference with Plaintiff's rights under ERISA. *See* FAC ¶¶ 95–113. Plaintiff divides these claims into three "subcounts." Subcount one is

asserted against the "Shoprite Welfare Fund, Plan 503," subcount two is asserted against "Employers Pension Fund, Plan 001," and the third subcount is against the "Board of Trustee[s] of Employers Benefit Office." *Id.* Each subcount is addressed in turn.

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To state a claim, a plaintiff must allege "(1) the employer committed prohibited conduct (2) that was taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007). "Plaintiff must show that 'the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits.'" *Id.* (quoting *DiFederico v. Rolm Co.,* 201 F.3d 200, 205 (3d Cir. 2000)). Proof that the plaintiff lost benefits because of termination alone is not enough. *Id.*

In Count V subcount one, Plaintiff alleges that Inserra and the Shoprite Welfare Fund, Plan 503 interfered with his benefits "by transferring those benefits to a non-union entity under a controlled group and misclassifying the plaintiff as a non-union employee." FAC ¶ 95. He further states he was treated "differently than other similarly situated employees who remain in the Shoprite Welfare Fund." FAC ¶ 97. And he contends "Inserra singled out the plaintiff and removed them from coverage, basing the decision not on overall employment, but on the termination from the full-time role." *Id.* ¶ 101. These appear to be allegations of discrimination. He also alleges that Inserra instructed the "Board of Trustees" to offer Plaintiff "the inferior Bronze plan" which costs a greater percentage of weekly pay. *Id.* ¶ 96. The Bronze plan appears to be a

healthcare plan offered to part-time ShopRite employees at Glass Gardens. *See* ECF No. 141. at 12–13. This, Plaintiff asserts, was done in retaliation.

Subcount one must be dismissed. Plaintiff, as above, has not alleged any facts beyond mere conclusory statements that defendants discriminated against him or retaliated against him by "transferring" his benefits and that he was treated "differently." That is, Plaintiff has not alleged facts that suggest defendant's actions were "taken for the purpose of interfering" with his benefits. *Jakimas*, 485 F.3d at 785. Without more, Plaintiff has failed to state a claim.

Subcount two is dismissed for the same reason. There, Plaintiff alleges Inserra and the "Employer Pension Fund, Plan 001" specifically targeted and singled him out for removal "from the Employer Pension Plan." FAC ¶¶ 102, 106. By removing him, defendants allegedly "interfered with the plaintiff's right to continue accumulating service toward a pension under the portable plan structure." *Id.* ¶ 103. Plaintiff further contends that Inserra did this "in concert with the Board of Trustees" which "indicates that this was not a simple termination, but a strategic maneuver to use their power and control over the plan for financial gain at the expense of the plaintiff's benefits." *Id.* ¶ 104. Finally, he alleges that Inserra and "the Board of Trustees" acted "with the specific purpose of interfering with the plaintiff's attainment of a right under the defined pension plan." *Id.* ¶ 107. As before, Plaintiff's allegations are conclusory and provide the Court with no reasonable basis to plausibly infer that defendants acted with the intent of interfering with Plaintiff's pension benefits. *See Jakimas*, 485 F.3d at 785 ("[A] plaintiff must demonstrate that the defendant had the 'specific intent' to violate ERISA.").

As for Count V subcount three, Plaintiff alleges that the "Board of Trustee[s] of Employers Benefit" sent Plaintiff a copy of the "Bronze Waiver" on false letterhead purporting to be from the

Shoprite Welfare Fund.[6] FAC ¶ 108. This was allegedly done "with specific intent to interfere with the plaintiff's rights" which amounts to "coercive and discriminatory action" in violation of Section 510. As the Court has made clear in this Opinion and in prior opinions, allegations like these that lack factual support will not survive a motion to dismiss. Here, Plaintiff's allegations are again conclusory and do not explain why or how the waiver was fraudulent or what facts support the allegation that it was sent with the specific intent to interfere with Plaintiff's rights. Count V is dismissed.

**4. FMLA Violations (Count VI)**

Plaintiff's next claim is that Inserra and its "Trustees" violated the Family and Medical Leave Act by firing Plaintiff from Glass Gardens Shoprite "on the very first day of FMLA leave" in August 2022. FAC ¶¶ 114–21. This, Plaintiff contends "creates a strong inference" that Inserra retaliated against him for asserting his rights under FMLA. *Id.* ¶ 117. To succeed on an FMLA retaliation claim, a plaintiff must show that "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (cleaned up).

In opposition, Inserra contends that it cannot be liable for the alleged FMLA violation because Plaintiff has not alleged Inserra was Plaintiff's employer at the time of the alleged retaliation. ECF No. 188-2 at 22–23; *see Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) ("FMLA retaliation claims require proof of the *employer's* retaliatory intent" (emphasis added)); *Kalski v. Brandywine Senior Living, LLC*, No. 22-4484, 2022 WL

---

[6] As the Court discussed in its prior Opinion and Order, Plaintiff waived coverage under the Bronze Plan. *See* ECF No. 141. at 12–13. Now, in the FAC, Plaintiff seems to contend that waiver form was somehow misleading. FAC ¶¶ 108–13.

17823862, at *4 (D.N.J. Dec. 20, 2022) ("FMLA liability also requires a plaintiff to show that a defendant is an employer subject to the requirements of the statute.").

The Court agrees. Indeed, Plaintiff's request for FMLA leave, which he attached to the FAC, lists "Glass Gardens" Shoprite as his employer. ECF No. 150-2, Ex. 19. Elsewhere in the FAC, Plaintiff alleges that "[o]n January 21, 2022, Inserra Supermarkets ceased to be the plaintiff's direct employer." FAC ¶ 25. But he also alleges "On August 17, 2022, Inserra Supermarkets became the plaintiff's part-time, single, non-union employer." *Id.* ¶ 40. He then contends Inserra "act[ed] on behalf of Glass Gardens Shoprite as the employer." *Id.* ¶ 43. Plaintiff, however, does not explain how Inserra supposedly acted on Glass Gardens' behalf, or for that matter, how Glass Gardens acted on Inserra's behalf. Accordingly, it is unclear to the Court, by Plaintiff's own allegations, who Plaintiff's employer was at the time of his alleged firing after requesting FMLA leave. The claim is dismissed.

**5. COBRA Claims (Count VII)**

COBRA "provides employees with the option of continuing the insurance coverage they had under their employer's policy in circumstances where they would lose coverage as a result of a 'qualifying event.'" ECF No. 141 at 15 (quoting 29 U.S.C. § 1161). A qualifying event "includes the termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." *Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 421 (E.D. Pa.), *aff'd,* 587 F. App'x 731 (3d Cir. 2014). As in prior complaints, Plaintiff appears to allege that he was not given proper notice of his rights under COBRA after he was terminated from the Hackensack ShopRite on January 21, 2022. FAC ¶¶ 122, 128–29.

As the Court discussed in its prior opinion dismissing the Third Amended Complaint, Plaintiff's allegations did not clearly explain what "plan he sought to extend through COBRA"

and "the identity of the plan administrator" that failed to provide proper notice of his rights. ECF No. 141 at 19. The same is true in the FAC. In Count VII, Plaintiff alleges it was Inserra, then ShopRite Welfare Fund Plan 503, and then the Board of Trustees that failed to provide appropriate notice. FAC ¶¶ 122, 128–29. As such, it is unclear what entity Plaintiff believes failed to provide him notice, which entity was the plan administrator, and exactly what benefits he sought to extend. *See* ECF No. 141 at 19 ("A complaint must 'specify which defendants performed which acts.'" (quoting *D'Urso v. BAMCO, Inc.*, No. 22-3723, 2023 WL 5623945, at *3 (D.N.J. Aug. 31, 2023))). Accordingly, the COBRA claims are dismissed.

**6. Plan Mismanagement (Counts VIII to XVII)**

Plaintiff next includes ten counts that seem to allege some defendants mismanaged certain plans, breached their fiduciary duties, and engaged in prohibited transactions under ERISA. These include claims for breach of fiduciary duty (Count X), breach of co-fiduciary duty (Count XI), joint and several liability (Count XII), self-dealing (Counts XIII and XIV), failure to maintain assets of the plan in a trust (Count XV), receiving personal consideration (Count XVI), and prohibited transactions (Count XVII).

Plaintiff included similar claims in the dismissed Third Amended Complaint. There, the Court explained that to state a claim for a breach of a fiduciary duty under ERISA the plaintiff must allege a "loss to the plan." ECF No. 141 at 13 (citing and quoting *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 184 (3d Cir. 2024)). "[A] 'loss to the plan' 'must inure to the plan as a whole, rather than to individual beneficiaries or a subclass of beneficiaries.'" *Id.* at 13–14 (quoting *Fox v. Herzog, Heine, Geduld, Inc.*, No. 01-1827, 2005 WL 3542464, at *3 (D.N.J. Dec. 27, 2005), *aff'd*, 232 F. App'x 104 (3d Cir. 2007)). Finally, the Court noted that breach of

fiduciary duty claims often arise in the context of a pension plan or retirement plan. *Id.* at 14 (collecting cases).

As before, Plaintiff does not allege a loss to the plan. Here, in Count IX (which is captioned "Loses to the Multiemployer Plan" and does not include a statute or other legal basis) Plaintiff claims that "[t]he plan lost future contributions that the Employer would have made on behalf of the plaintiff" had he not been terminated which allegedly impacted the plans "actuarial soundness." FAC ¶¶ 139, 141. He further contends that some unnamed and unexplained claims were "shift[ed]" to Medicaid which "leads to extra costs associated with improper claim administration." *Id.* ¶ 144. Plaintiff's allegation that his termination led to lost contributions to the plan does not constitute an injury to the plan itself. *See Williams v. Fort Dearborn Life Ins. Co.*, No. 05-2436, 2005 WL 8177301, at *3 (E.D. Pa. July 28, 2005) ("[A] simple denial of benefits cannot create a lawsuit for breach of fiduciary duty to the plan itself."). To hold otherwise would transform any employment termination in which the employee had a pension into an ERISA breach of fiduciary duty claim.

Additionally, to the extent a breach of fiduciary duty claim could even be brought for allegedly shifting "claims" to Medicaid, Plaintiff has not provided factual support for these allegations. Rather, he conclusively states, without more, that "Inserra Supermarkets fraudulently administered HCFA Medicaid claims through the Benefit Fund Office as a single non-union employer." FAC ¶ 63. As such, the breach of fiduciary duty claim must be dismissed. And, because the claim is dismissed, Plaintiff's claim for co-fiduciary breach (Count XI) and joint and several liability (Count XII) must be dismissed as well. *See, e.g.*, *Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp. 2d 438, 443 (E.D. Pa. 2012) ("[B]ecause there is no underlying breach of fiduciary duty, the derivative claim . . . of a breach of co-fiduciary dut[y] . . . fail[s].").

Plaintiff's next mismanagement claims pertain to improper transactions under 29 U.S.C. § 1106. He alleges that the "Trustees of Inserra Supermarkets, Inc." and "The Board of Trustees of multiemployer plan[s] 503, 501, 001" engaged in self-dealing (Counts XIII and XIV), that Inserra Supermarkets "receiv[ed] personal consideration" (Count XVI), and that the "Board of Trustees," "Inserra," and a union representative engaged in prohibited transactions (Count XVII).

As in the Third Amended Complaint, Plaintiff has failed to allege a prohibited transaction with sufficient specificity to survive a motion to dismiss. *See* ECF No. 141 at 14–15. In Count XIII Plaintiff conclusively states that Inserra was in "a position to control the plan's assets and used the control to [its] advantage." FAC ¶ 180. He repeats the allegations of control in Count XVI. This does not clarify which plan assets they controlled, how Inserra controlled said assets, or how Inserra used those assets to its advantage. In Counts XIV and XVII Plaintiff restates other claims and conclusory statements discussed herein and appears to repackage them as allegations of prohibited transactions and self-dealing. *See, e.g.*, FAC ¶¶ 182 (alleging Board of trustees incurred withdrawal liability by "transferring work and benefits"), 183 ("The Board of Trustees expelled the plaintiff from the Shoprite Welfare Fund."), 185 ("The Board of Trustees failed to provide COBRA continuation coverage."), 193 ("Inserra's absorption of the Glass Gardens' contributions was designed to benefit Inserra Supermarkets by avoiding withdrawal liability"), 195 ("the Board of Trustees facilitated the avoidance of withdrawal liability"). Accordingly, Counts XIII, XIV, XVI, and XVII are dismissed.

Plaintiff's final mismanagement claim is that "The Board of Trustees of Shoprite Welfare Fund, Employers Pension Fund (DB), and Employers' Retirement and Savings Fund (DC) failed to maintain Glass Gardens' assets contributions on behalf of the plaintiff in Trust" in violation of

29 U.S.C. § 1103. FAC ¶ 188. As is clear from this Opinion, such conclusory allegations will not suffice. Count XV is dismissed.

### 7. Failure to Provide Plan Documents (Count XVIII to XX)

Plaintiff's final set of ERISA allegations in Counts XVIII to XX pertain to defendants' alleged failure to provide plan documents as required by 29 U.S.C. § 1024(b)(4). FAC ¶¶ 197–207. The provision states that "The *administrator* shall, *upon written request* of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4) (emphasis added). Plaintiff alleges that eleven different defendants were plan administrators of different plans and that certain plans had multiple administrators. FAC ¶¶ 197–207. Additionally, Plaintiff lists dates on which defendants purportedly "failed to provide plan documents." *Id.* Plaintiff, however, does not allege whether he requested documents, and if he did, when he made those requests, and whether the requests were made in writing. *See, e.g.*, *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-01649, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) (Dismissing claim because "Plaintiff does not allege that it sent a written request" for plan documents under ERISA). And, critically, Plaintiff does not allege what documents he supposedly requested. Plaintiff has failed to state a claim in Counts XVIII–XX.

## B. ADA Claims Against Inserra

Plaintiff raises six Americans with Disabilities Act claims. As discussed below, one of his claims can proceed, but the other five claims must be dismissed for failure to exhaust administrative remedies.

### 1. Discrimination by Unlawful Termination

Plaintiff claims that Inserra violated the ADA through unlawful discrimination, i.e., disparate treatment. FAC at 30. "To establish a prima facie case of disparate treatment under the ADA, a plaintiff must show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). Inserra does not, at this stage, dispute that Plaintiff is disabled but contends that Plaintiff has failed to show the second and third elements of a prima facie claim. ECF No. 188-2 at 11–14.

As for the second element—whether a plaintiff is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations—Inserra contends that Plaintiff has not met his burden because a "plaintiff who does not avail himself of corrective medication is not a qualified individual under the ADA." *Id.* at 12 (quoting *Hewitt v Alcan Aluminum Corp.*, 185 F. Supp. 2d 183, 189 (N.D.N.Y. 2001)). Inserra points to a letter from Plaintiff's doctor after he was fired, stating that Plaintiff was not taking his medication for his mental illness. *Id.* at 12–13; *see* FAC ¶¶ 210–12, 218; ECF No. 150-2, Ex. 15. This is unavailing because the ADA "now contains a provision declaring that whether an impairment is substantially limiting must be judged 'without regard to the ameliorative effects of mitigating measures.'" *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 186 n.3 (3d Cir. 2010) (quoting 42 U.S.C. § 12102(4)(E))); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), *superseded by statute*, ADA Amendments Act of 2008 Pub. L. 110-325, 122 Stat. 3555 (2008); *Sprenkle v. AMZ Mfg. Corp.*, No. 16-939, 2018 WL 11488846, at *5 (M.D. Pa. Feb. 8, 2018) ("Under the amended

ADA . . . it is irrelevant to a determination of [plaintiff]'s disability that his medication may enable him to fully enjoy all major life activities.").

For the third element—adverse employment decision due to disability—Plaintiff claims that the adverse employment action was that he was terminated due to his disability. *See* FAC ¶¶ 214–16, 224, 260. In support, he alleges that on January 4, 2022, he informed his supervisor that he suffers from depression and anxiety. *Id.* ¶ 214. Shortly thereafter at the January 21 meeting in which he was terminated, Donald Merritt, the Director of UFCW Local 1262's Executive Board, told him to "Get some help! Get some professional help!" *Id.* ¶ 215. And after Plaintiff was informed of his dismissal, Inserra's COO, Ron Onorato, stated "I got to worry about you getting your ass kicked!" "I got to worry about a pallet getting dropped on your head!" "You don't think people talk!" *Id.* ¶ 216.

Plaintiff contends that Onorato's comment shows that he "openly weaponized the Plaintiff's known . . . mental health status as a justification for dismissal" and that it "reveal[s] that the decision to terminate was rooted in a discriminatory perception of the Plaintiff as a 'liability' or a 'victim' rather than a professional assessment of his twenty-one-year work record." ECF No. 189 at 33. In other words, it constitutes evidence that he was fired due to his disability. In its prior opinion addressing similar allegations the Court wrote:

> Plaintiff alleges that he was later terminated "because Inserra [was] worried that a pallet might get dropped on [his] head or that [he] might get their ass kicked or that 'people talk.'" ECF No. 68 ¶¶ 33, 36. Plaintiff contends these comments were made to him "due to disability," but he does not specify who made these comments or how they have anything to do with his disability. Nor does Plaintiff assert that Inserra told him these were the reasons he was terminated, and in any event, the Court cannot discern the meaning of these allegations. Therefore, these allegations do not "plausibly infer that [Plaintiff] was actually terminated because of his purported disability." *Ceus v. New Jersey Laws. Serv., LLC*, No. 19-17073, 2021 WL 4173839, at *3 (D.N.J. Sept. 14, 2021).

ECF No. 141 at 6 (alterations in original).

Now, when considering Plaintiff's amended allegations, the Court finds that Plaintiff has plausibly alleged he was terminated due to his disability for several reasons. First, Plaintiff clarified that Onorato allegedly made the comment. Onorato was Inserra's Chief Operating Officer and was allegedly a part of the decision to terminate Plaintiff. FAC ¶ 18 ("Ron Onorato planned weeks in advance to carry out the plaintiff's termination."). Second, Plaintiff was allegedly told to "get some help," presumably for his mental illness, by the Director of Local 1262's Executive Board who was at the meeting in which Plaintiff was fired. Third, both comments were allegedly made immediately after Plaintiff was terminated. This suggests that Plaintiff's disability may have been discussed at the meeting and may have played a role in Inserra's decision to fire Plaintiff. *See, e.g.*, *Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 211 (3d Cir. 2007) (Explaining in age discrimination context that "remarks made by supervisors directly involved in the termination decision at issue can be evidence of their discriminatory animus"). Accordingly, Inserra's motion to dismiss the disability discrimination claim is denied.

**2. Plaintiff's Remaining ADA Claims**

Plaintiff also asserts ADA claims for retaliation, interference, failure to provide reasonable accommodations, perpetuating discrimination of others subject to common administrative control, and "participation in a contractual and other arrangement with Local 1262 Union subjecting Plaintiff with disability to discrimination." FAC at 30. These claims must be dismissed for failure to exhaust administrative remedies.

The Court explained in its two prior opinions dismissing Plaintiff's Second and Third Amended Complaints that "a plaintiff must receive a right to sue letter from the [Equal Opportunity Employment Commission] before bringing [an ADA] lawsuit in court." ECF No. 65 at 7 (citing *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). "The scope

of the lawsuit is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010)).

In the prior opinions the Court determined that Plaintiff's EEOC charge alleged only a claim for wrongful termination. *Id.* ("Plaintiff's EEOC charge only alleges a claim for wrongful termination."); ECF No. 141 ("Plaintiff's EEOC charge appears to allege wrongful termination."); ECF No. 152-2, Ex. 9. Nothing in Plaintiff's FAC changes the Court's prior opinions. So, the remaining ADA claims are dismissed.

### C. Dismissal with Prejudice

Plaintiff has filed five complaints in this action and has not cured the deficiencies identified in this Opinion and the Court's prior opinions regarding the dismissed ERISA, FMLA, and ADA claims. *See* ECF Nos. 1, 6, 35, 68, 150. Accordingly, future leave to amend and replead the ERISA, FMLA, and ADA claims dismissed herein would be futile and inequitable to defendants. The claims dismissed in this Opinion are therefore dismissed with prejudice. *See, e.g.*, *Martin v. Highmark Health Ins. Co.*, No. 23-01311, 2024 WL 1458539, at *4 (W.D. Pa. Apr. 4, 2024) ("Repeated failure to cure deficiencies in the complaint by amendments previously allowed and futility of further amendment can constitute a basis for the Court to deny further leave to amend.").

## IV. CONCLUSION

For the reasons stated herein, the motions to dismiss are granted except that the motion to dismiss at ECF No. 188 is granted in part and denied in part.

Accordingly, for the reasons stated above, **IT IS** on this 27th day of August, 2026;

**ORDERED** that Plaintiff's motion to file a sur-reply (ECF No. 213) is **GRANTED**; and it is further

**ORDERED** that defendants' motions to dismiss (ECF Nos. 181, 187, 190, 191, 193, 197, 198, 200) are **GRANTED**; and it is further

**ORDERED** that the motion to dismiss at ECF No. 188 is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's claim that Inserra violated the Americans with Disabilities Act by allegedly firing him due to his disability may proceed; and it is further

**ORDERED** that the claims dismissed herein are dismissed with prejudice.

**SO ORDERED**.

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**